IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JESSE SCHAFER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-cv-1053-DGK |
| ) | |
| JEFFREY MACMILLAN, and ) | |
| FARMERS INSURANCE COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING MOTION TO REMAND

This case arises from a motorcycle accident. Plaintiff Jesse Schafer ("Schafer") sustained injuries when his motorcycle was struck by Defendant Jeffrey MacMillan ("MacMillan"). On July 3, 2014, Schafer filed a one-count lawsuit in Circuit Court of Cass County, Missouri (the "Circuit Court"), alleging that MacMillan's negligence in operating his car caused the collision. Schafer amended his complaint on October 14, 2014 to add a claim for underinsured motorist coverage against Defendant Farmers Insurance Company ("Farmers"). On October 16, 2014, the Circuit Court judge entered a $650,000 consent judgment against MacMillan. Farmers then removed to this Court, alleging jurisdiction based upon diversity of citizenship.

Now before the Court are Farmers' motion to dismiss MacMillan for fraudulent joinder (Doc. 2) and Schafer's motion to remand (Doc. 9). Addressing Schafer's motion first, the Court finds that the consent judgment rendered against MacMillan effectively dismissed him—the only non-diverse defendant—from this lawsuit prior to removal and the underinsured motorist policy limit exceeds the amount-in-controversy threshold. Accordingly, Schafer's motion is DENIED. Since MacMillan was effectively dismissed while in state court, Farmers' motion is DENIED as moot.

**Factual Background**

On May 24, 2014, Schafer was riding his motorcycle when MacMillan's alleged negligence caused a collision. Schafer sustained injuries to his knees, legs, and back. He then filed a one-count negligence lawsuit against MacMillan in the Circuit Court.

At the time of the accident, MacMillan had an automobile insurance policy with Progressive Casualty Insurance Company ("Progressive"). This policy included liability coverage of $25,000 for each of the two cars owned by him and his wife. Schafer, in pursuing his negligence claim against MacMillan, claimed that he should be entitled to stack the coverage for each vehicle for a total liability amount of $50,000. Progressive and MacMillan opposed this interpretation.

At the time of the accident, Farmers had issued an underinsured motorist policy (the "UIM Policy") to Linda and Michael Schafer, presumably some relation to Jesse (although neither party explains). The UIM Policy applied to two cars—a 1996 Mazda and a 2005 Chevrolet Malibu—and provided a bodily injury maximum policy limit of $250,000 per car/person. To recover from this payout, an individual must qualify first as an "insured person," which includes:

(1) "you" (the policy holders Linda and Michael Schafer);
(2) "any family member" ("a person related to you by blood, marriage or adoption who is a resident of your household");
(3) "any other person while occupying your insured car" ("occupying means in, on, getting into or out of"); or
(4) "any person for damages that person is entitled to recover because of bodily injury to you, a family member, or another occupant of your insured car."[1]

---

[1] With respect to this insured category, "damages" is defined as "the cost of compensating those who suffer bodily injury or property damage from an accident," while "bodily injury" is "bodily injury to or sickness, disease or death of any person." (Doc. 9-5 at 8).

2

(Doc. 9-5 at 8, 12). However, another provision in the UIM Policy states that Farmers will "provide insurance for an insured person, other than you or a family member, up to [$25,000][2] only." (Doc. 9-5 at 13).

Sometime before August 6, 2014, Schafer applied for coverage under the UIM Policy. On August 6, 2014, Farmers denied coverage, claiming that an exclusion applied because the motorcycle (1) was not an insured vehicle under the policy, and (2) was actually owned by Schafer and insured under another insurance policy. The letter did not mention whether Schafer qualified as a "family member," nor do the parties provide definitive proof that he did.

On September 24, 2014, Schafer, MacMillan, and Progressive entered into a settlement agreement, pursuant to Mo. Rev. Stat. § 537.065.[3] The terms were as follows: Progressive agreed to immediately pay Schafer $25,000, with the possibility that it would also pay another $25,000 depending upon the outcome in a pending Supreme Court of Missouri case regarding insurance policy stacking; MacMillan agreed to entry of a $650,000 consent judgment against him in the Circuit Court; and Schafer agreed to only collect on that judgment from Progressive and Farmers, not MacMillan personally.

On October 14, 2014, Schafer amended his complaint to add a declaratory judgment claim against Farmers for underinsured motorist coverage.[4] Two days later, the Circuit Court judge, after reviewing the § 537.065 settlement agreement, entered a $650,000 consent judgment against MacMillan. After being served and entering an appearance in the state court, Farmers

---

[2] This bracketed portion actually reads, "the limits of the Financial Responsibility Law." (Doc. 9-5 at 13). But Schafer contends—and Farmers does not dispute—that this limit is $25,000 here.

[3] This provision essentially shields an insured tortfeasor from personal liability by allowing him to enter a contract with the injured person and the tortfeasor's insurer under which the injured person agrees to only collect upon a potential judgment against the tortfeasor's insurer and/or another insurer. *See* Mo. Rev. Stat. § 537.065.

[4] The nature of this claim is not completely clear from the face of the amended complaint. Nevertheless, Farmers contends it is a declaratory judgment claim, and the Court agrees since it appears to be seeking a determination that Farmers is required to pay under the terms of the underinsured motorist provision in the insurance policy.

3

timely removed to this Court, alleging diversity jurisdiction.  The parties agree that Schafer and MacMillan are Missouri citizens, while Farmers is a California and Kansas citizen.

## Standard of Review

An action may be removed by the defendant where the case falls within the district court's original jurisdiction.  28 U.S.C. § 1441(a).  If the case does not fall within these jurisdictional bounds, the district court must remand the case to the state court from which it was removed.  *Id*. § 1447(c).  To invoke diversity jurisdiction, the parties must be citizens of different states and the amount in controversy must exceed $75,000.  *Id.* § 1332(a).  Complete diversity between the parties is required; the presence of a single plaintiff from the same state as a single defendant destroys diversity and extinguishes the district court's power to hear the matter.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).  The defendant must also demonstrate by a preponderance of the evidence that a fact finder might legally conclude that damages in the case exceeds the jurisdictional threshold.  *See Grawitch v. Charter Comm'ncs, Inc.*, 750 F.3d 956, 959 (8th Cir. 2014).

When considering a motion to remand, the district court must strictly construe the removal statute and resolve all doubts in favor of remand, *see Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997), but it may consult affidavits and other documents submitted by the parties to determine whether jurisdiction exists.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010), *cited with approval in Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013).

4

**Discussion**

Schafer contends that diversity jurisdiction is nonexistent for two reasons. First, Schafer and MacMillan share Missouri citizenship. Second, Schafer argues that the amount in controversy fails to exceed $75,000. The Court addresses each in turn.

**I. There is complete diversity of citizenship because the consent judgment in state court resolved all outstanding claims against MacMillan.**

The Court first addresses whether complete diversity of citizenship exists. Farmers contends that although MacMillan and Schafer share Missouri citizenship, the Court should ignore MacMillan's citizenship because he was fraudulently joined to prevent removal.

The Court need not address the fraudulent joinder argument because diversity of citizenship exists for a more fundamental reason. After removal, the state court orders and judgments remain fully binding upon the parties unless a party convinces the federal court that they should be dissolved or modified. 28 U.S.C. § 1450. In other words, the federal court essentially "takes up the case where the state left off." *Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681, 687 (W.D. Pa. 2011) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 436 (1974)).

Here, prior to removal, the state court rendered a $650,000 consent judgment against MacMillan on the sole count levied against him. Under Missouri law, a consent judgment is generally accorded the same deference as a full and fair judgment on the merits. *Fuller v. Moore*, 356 S.W.3d 287, 289-90 (Mo. Ct. App. 2011). The consent judgment rendered against MacMillan thus effectively ended the case against him. And Schafer makes no attempt to set it aside, so it remains fully binding here. *See Killmeyer*, 817 F. Supp. 2d at 687.

Schafer, however, contends that MacMillan remains integral to this litigation because the full extent of liability against Progressive, his insurer, has not been fully determined. According

5

to Schafer, depending on the outcome of a pending Supreme Court of Missouri case, further litigation against MacMillan may be needed to determine whether Progressive must pay the extra $25,000 discussed in the settlement agreement.

This argument misses the mark. Although Schafer may be entitled to another $25,000, this entitlement in no way undermines the consent judgment's effect. That judgment fixed the liability against MacMillan and ended his obligation to participate in this litigation. *Cf. Balling v. Bendickson*, No. 4:12-CV-860-CAS, 2012 WL 3715810, at *3 (E.D. Mo. Aug. 27, 2012) (holding that a tortfeasor's entry into a § 537.065 settlement agreement with the injured party did not render the tortfeasor a nominal defendant because the tortfeasor *never agreed* to entry of a consent judgment but rather still contested liability in the federal court action after removal). Although MacMillan may still be party to more litigation, it would be ancillary to this case: it would arise solely from the terms of the settlement agreement, which contemplates that Progressive may institute a separate declaratory judgment action against Schafer and MacMillan, as defendants. This action, if it even comes to pass, will only determine whether *Progressive* must pay the remaining $25,000 policy limits; it will not concern whether *MacMillan* is liable for Schafer's injuries, and if so, how much he must pay. The consent judgment resolved these latter issues. *Cf. id.* (stressing that despite a § 537.065 agreement, no consent judgment had been entered against the tortfeasor).

Because MacMillan was no longer a defendant at the time of removal, his citizenship presents no impediment to federal jurisdiction. And since Farmers—the only remaining defendant—and Schafer are citizens of different states, complete diversity of citizenship exists.

6

## II. The amount in controversy exceeds $75,000 because Schafer seeks a declaration of coverage for underinsured motorist coverage with a maximum per person policy limit of $250,000.

Schafer next contends that Farmers has not met its burden of demonstrating that the amount in controversy exceeds $75,000. The Court disagrees.

Where, as here, the plaintiff's complaint in a declaratory judgment action for insurance coverage fails to specify an amount sought, the policy limit may be relevant in determining the amount-in-controversy requirement. *See In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003). For instance, when a plaintiff seeks insurance coverage for a particular occurrence, the maximum policy limit determines the amount in controversy if the value of the underlying claim exceeds the policy limit. *See Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002); *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997), *cited with approval in Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, LLC*, 620 F.3d 926, 932 (8th Cir. 2010).

Here, neither party disputes that the value of the underlying tort claim—at least $600,000—exceeds all of the maximum policy limits; rather, the parties wrangle over *what* policy limit applies. Farmers contends that Schafer is seeking coverage under the $250,000 policy limit because he believes he qualifies as a "family member." Schafer, on the other hand, contends that Farmers has not proven that he qualifies as a "family member," and thus, it is not clear that the $250,000 policy limit is at issue.[5] Although he intimates that he may qualify under the $25,000 policy limit, Schafer never states he is *only* seeking coverage under this provision or that he is not seeking coverage under the $250,000 policy limit.

---

[5] Schafer also contends that Farmers cannot alternatively deny coverage under the UIM policy yet claim that the amount in controversy is $250,000. The Court disagrees because Farmers is simply arguing that *assuming* Schafer succeeds on the merits, the amount-in-controversy would be over the jurisdictional threshold. This is permissible. *See Raskas*, 719 F.3d at 888 (noting that the defendant need not confess liability to establish the amount in controversy in a case removed under the Class Action Fairness Act).

7

Farmers has the better argument. From Schafer's application for coverage, it is apparent that Schafer believes he qualifies as an "insured person" under the UIM Policy. Since neither party provides direct evidence (e.g., a coverage request letter) as to under which definition he might qualify, the Court must resort to process of elimination. As Farmers notes, Schafer does not qualify as "you" because he is not one of the named policy holders—Linda and Michael Schafer. Nor can he qualify as an occupant of an insured vehicle because he was riding his motorcycle—not one of the insured cars—when injured. This leaves two possibilities: (1) a "family member"; (2) "any person for damages that person is entitled to recover because of bodily injury to you, a family member, or another occupant of your insured car." The latter, however, appears to be inapplicable. Although this broadly worded provision has been interpreted to provide coverage to a broad swath of individuals, *cf. Great Am. Ins. Co. v. Zukowski*, No. 95-CV-4470, 1996 WL 368256, at *4 (E.D. Pa. June 24, 1996), it does have its limits: the damages incurred by the "any person" must arise from a bodily injury to an insured person. There is no evidence suggesting that Schafer's damages arose from any bodily injury to a policy holder, a family member, or another occupant of an insured car. On the contrary, his damages, if any within the meaning of the policy, arose from MacMillan's actions. Thus, it appears that the only "insured person" definition that may apply is "family member."

Some further facts confirm that this is indeed the section that Schafer is attempting to invoke. Jesse Schafer shares the same surname as the policy holders, and thus, in absence of contrary facts it is reasonable to find by a preponderance of the evidence that he is blood relative or related by marriage or adoption. *See* (Doc. 9-5 at 8) ("Family member means a person related to you by blood, marriage or adoption who is a resident of your household."). Moreover, he sought and obtained a $650,000 consent judgment all the while knowing that Progressive would

8

only satisfy, at most, $50,000, and that he would have to recover the balance from Farmers. This suggests that when he sued Farmers he was at least contemplating recovering from the larger policy limits. And as noted by Farmers, such a conclusion is further corroborated by the fact that Schafer could have stipulated to *only* seek coverage under the $25,000 policy limit to guarantee that the amount in controversy would not be met, but he did not do so. *See Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) ("A plaintiff can defeat removal of a diversity case by *irrevocably committing (before the case is removed)* to accepting no more than $75,000 damages…no matter how great her actual damages." (emphasis added)). Thus, the Court finds by a preponderance of the evidence that Schafer will only qualify as insured, if at all, under the "family member" definition.[6]

Such a classification would legally qualify him to recover from the $250,000 policy limit. And as this amount is exceeded by the value of the underlying claim (at least $600,000) and exceeds the jurisdictional threshold ($75,000), the amount-in-controversy requirement is met.

## Conclusion

Because there is complete diversity of citizenship between the two remaining parties and the amount in controversy exceeds the $75,000 threshold, Schafer's motion to remand (Doc. 9) is DENIED. Since the Court finds that the consent judgment necessarily dismissed MacMillan from this lawsuit, Farmers' motion to dismiss him (Doc. 2) is DENIED as moot.

**IT IS SO ORDERED.**

Date:  August 7, 2015                              /s/ Greg Kays
                                                   GREG KAYS, JUDGE
                                                   UNITED STATES DISTRICT COURT

---

[6] This conclusion is of course subject to change depending on what discovery reveals. If it is later determined that Schafer could only recover under the $25,000 maximum policy at the time of removal, then remand may be required. *See Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 392 (1998) (noting that remand for lack of subject-matter jurisdiction may take place at any time).

9